1
2
3
4
5
6                    **THE DISTRICT COURT OF GUAM**
7
YE-KYOUNG KIM,                              CIVIL CASE NO. 23-00026
8
                    Plaintiff,
9                                           **DECISION AND ORDER
                                            GRANTING IN PART AND
10           vs.                            DENYING IN PART DEFENDANTS'
                                            MOTION TO DISMISS; AND
UNIVERSITY OF GUAM, et al.,                 DENYING PLANTIFF'S REQUEST
11                                          FOR ENTRY OF DEFAULT**
                    Defendants.
12
13
14          Before the court is Defendants University of Guam, Anita Borja Enriquez, Anthony R.

Camacho, Carlos R. Taitano, Sharleen Q. Santos-Bamba, Cathleen Moore-Linn, and Joseph
15
Gumataotao's (collectively, "Defendants") Motion to Dismiss Plaintiff Ye-Kyoung Kim's
16
Complaint for employment discrimination and retaliation. Mot., ECF Nos. 18-19. Also before
17
the court is Plaintiff's Request for Entry of Default. Request, ECF No. 29. The Plaintiff is
18
proceeding pro se. The court has reviewed the record, the relevant case law, and deems this
19
matter suitable for submission without oral argument.
20
            For the reasons stated below, the court hereby **GRANTS IN PART** and **DENIES IN**
21
**PART** Defendants' Motion to Dismiss, allowing Plaintiff leave to amend in certain respects. The
22
court also **DENIES** Plaintiff's Request for Entry of Default. As explained below, Plaintiff is
23
permitted leave to amend her Complaint within 60 days of this Decision and Order. Otherwise,
24

1  the Plaintiff's Complaint is dismissed with prejudice.

2  **I.    Factual Allegations**

3       The court assumes the following relevant allegations of the Complaint are true for

4  purposes of this Motion to Dismiss. *See, e.g.*, *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d

5  1480, 1484 (9th Cir. 1995).

6       Plaintiff Ye-Kyoung Kim ("Plaintiff") is an Asian woman and Korean national. *See*

7  Compl. at 10, Attach. 1, ECF No. 1.[1] In 2021, she was 53 years of age. *Id.* at Attach. 1. Plaintiff

8  earned a Ph.D. from The Ohio State University and has experience teaching in higher education.

9  *See id.* at 10.

10      Defendant University of Guam ("University") is a higher education institution located in

11 Mangilao, Guam. Compl. Attach. 7, ECF No. 1. The University is home to two colleges and

12 three professional schools. *Id.* As of August 2021, the University had about 3,900 students, 90%

13 of which were of Asian or Pacific Islander ancestry. *See id.* Defendants Enriquez, Camacho,

14 Taitano, Santos-Bamba, Moore-Linn, and Gumataotao (collectively, "Individual Defendants")

15 were university employees at all times relevant to this case.[2] *Id.* at 2-3, 7.

16     **A.  2007-2010**

17      Plaintiff's allegations begin as early as August 2007 when she joined the University's

18 School of Education as a tenure track professor in TESOL and IT.[3] Compl. at 10, Attach. 5, ECF

19

20 _____

21 [1] Citations to the record refer to CM/ECF pagination, not page numbers provided by the filer.

22 [2] Plaintiff identifies the Individual Defendants' job titles as follows: Ms. Borja, President; Mr. Camacho, University General Counsel; Mr. Taitano, Director of Global Learning and Engagement; Ms. Santos-Bamba, Interim Senior Vice President and Provost; Ms. Moore-Linn, Executive Director Research Corporation; and Mr. Gumataotao, Chief Human Resources Officer. Compl. at 2, 7, ECF No. 1.

23 [3] Compl. at 10, ECF No. 1. TESOL stands for "Teaching English to Speakers of Other Languages." *E.g.*, *Lishu Yin*

24 *v. Columbia Int'l Univ.*, 335 F. Supp. 3d 803, 807 n.1 (D.S.C. 2018). Plaintiff does not allege sufficient information

No. 1. Plaintiff alleges that at the start of the 2007-2008 academic school year, she was treated differently from other first-year assistant professors—for example, she had to teach seven classes instead of three. *Id.* at Attach. 5. Then, during the 2008-2009 academic year, she alleges that she was treated unfairly in several respects: (1) her pay was incorrectly set and left uncorrected; (2) she experienced several inappropriate comments about her identity as both a woman and a Korean woman; (3) she was not invited to regular academic activities, such as faculty meetings; (4) she was not provided proper teaching equipment, such as a projector; and (5) she was excluded from email discussions and messages by other staff. *Id.*

Plaintiff submitted a request for reappointment in January 2009 to correct her pay, but she remained in reappointment procedures until at least September 2009. *Id.* On September 9, 2009, Plaintiff filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the University discriminated against her based on her sex, race, and national origin. *Id.* On January 12, 2010, Plaintiff and the University signed a settlement agreement facilitated by the EEOC.[4] *Id.* at 29. Plaintiff resigned the same day. *Id.* at 11.

### B. 2014-2017

Between August 2014 and May 2017, Plaintiff worked as an adjunct professor of computer science at the University's College of Natural and Applied Sciences. Compl. at 20, ECF No. 1. During this time, Plaintiff alleges that she was overlooked for several positions at the University, including Assistant Professor of TESOL in the School of Education, Associate

---

to determine what "IT" is abbreviating, but the court assumes this stands for "Information Technology."

[4] Plaintiff indicates that she attached sixteen documents to her Complaint, including the above-mentioned settlement agreement. Compl. at 29-30, ECF No. 1. However, neither the settlement agreement (marked as "Attachment 6"), nor attachments 2, 4, 8-11, and 15-16, were included in her filing. *See* Compl. at 29-61, ECF No. 1.

Professor of Linguistics in the College of Liberal Arts and Social Sciences, Director of the Office of Research and Sponsored Programs, and Academic Advisor at the Student Center. *Id.* at 22. Plaintiff further alleges that, unlike other candidates, she did not receive an interview. *Id.* She also notes that unlike other candidates, she was not a University of Guam graduate or of Chamorro descent. *Id.*

In one instance from 2017, Plaintiff learned of a job opening for Dean of the University's Student Services Center, so she reached out to the search committee chair, Dr. Lee Yudin, for more information. *Id.* at 21. When she spoke with Dr. Yudin, Plaintiff alleges that his first response to her interest in the position was to inquire about her visa status. *Id.* When Plaintiff informed him that she was married to a U.S. citizen, she claims that he responded that she was not qualified for the position. *Id.* Plaintiff decided not to apply because she perceived "racism and bias" from Dr. Yudin. *Id.*

**C. 2020**

Several years later, on September 15, 2020, Plaintiff applied for the role of Extension Agent III/Assistant Professor in Community, Economic, and Resource Development at the College of Natural and Applied Sciences. Compl. at 22, ECF No. 1. On September 23, 2020, Plaintiff was invited to interview via Zoom with Dr. Kuan-Ju Chen, who was recently appointed Assistant Professor of Agricultural Economics and the search committee chair for this position. *Id.* at 23. Prior to her interview, Plaintiff submitted additional application materials, such as a five-minute lecture video and letters of recommendation, as requested by Dr. Chen. *Id.* at 23. Plaintiff alleges that she had concerns about Dr. Chen's suitability to chair the search committee because of his "recent appointment" and "limited contributions" to the college. *Id.*

Plaintiff interviewed for the position on October 1, 2020. Compl. at 23, ECF No. 1.

However, she alleges two principal concerns with her interview. First, Plaintiff alleges that the interview started twenty minutes late due to technical issues and was later delayed an additional hour. *Id.* Second, Plaintiff alleges that the committee was predominately composed of "young Pacific Islanders" "connected through UOG alumni networks" and individuals without Ph.Ds., despite the position "ideally require[ing] a Ph.D."[5] *Id.*

Plaintiff alleges that she was not informed of her application status after the interview despite attempts to "seek clarity." Compl. at 23-24, ECF No. 1. On October 27, 2020, Plaintiff discovered Joseph Tuquero, a member of the search committee, was granted tenure as Extension Agent III/Assistant Professor in the College of Natural and Applied Sciences/CE&O[6] on October 22, 2020. *Id.* at 25. Plaintiff identified Mr. Tuquero as a Filipino local Pacific Islander and UOG alumni who did not have Ph.D. *Id.* Plaintiff further alleges that Mr. Tuquero held an Agent II position in 2015, was promoted to Extension Agent III/Instructor on August 19, 2019, and then promoted to the current position on October 5, 2020, which she characterizes as a "rapid promotion." *Id.*

Plaintiff alleges that she spoke with one of her references, Dr. Zoltan Szekely, an Associate Professor of Mathematics at the University, via Facebook message about her application. Compl. at 25, ECF No. 1. She claims that Dr. Szekely stated, among other things, that Dr. Yudin would prefer a given candidate, that "things would happen in his favor," and that hiring "is very heavy on emotions." *Id.* Plaintiff also claims to have spoken with Dr. Frank Lee, a former professor of computer science at the University, who (in reference to hiring between 2014

---

[5] Plaintiff alleges that the interview was conducted by eight members, only two of which were "non-Pacific Islanders holding Ph.Ds." Compl. at 23, ECF No. 1.

[6] Plaintiff does not allege facts sufficient to discern what "CE&O" is abbreviating.

1    and 2017) stated that the final decisions "often aligned with the Dean's preferences." *Id.* at 26.[7]

2        On October 29, 2020, Plaintiff raised concerns about the hiring process with the

3    University's Human Resources Office ("HR Office") but did not receive a response. Compl. at

4    26, ECF No. 1. On October 30, 2020, Plaintiff discovered that Dr. Tim C. Dela Cruz was

5    promoted to a College of Natural and Applied Sciences/CE&O position but claims that the

6    University did not specify his new role in the announcement.[8] *Id.* at 27. Nonetheless, Plaintiff

7    claims that "UOG Staffing Patterns revealed discrepancies in his hiring date and role, suggesting

8    that he did not meet eligibility for the Extension Agent III/Assistant Professor position I was

9    rejected for." *Id.* Plaintiff states that both Mr. Tuquero and Dr. Dela Cruz were younger, Pacific

10   Islander, and less qualified than her. *Id.*

11        Plaintiff alleges that she then communicated with Dr. Ronald McNinch, an Associate

12   Professor of Public Administration at the University, "who indicated that UOG positions are

13   based on 'rank in person' rather than 'rank in position.'" *Id.*

14    **D. 2021-2022**

15        On August 26, 2021, Plaintiff applied for Associate Director of the University's Global

16   Learning and Engagement Office ("Global Learning Office"), a senior-level academic

17   administrator position. Compl. at 11, ECF No. 1. The position required a master's degree with

18   two years of progressively responsible and relevant leadership experience in at least two of five

19

20    ———————————

21    [7] Plaintiff cites to Attachment 16 of her Complaint, which was not filed. *See supra*, note 4.

22    [8] Plaintiff alleges that Dr. Dela Cruz holds a Ph.D. in Guam Sex Trader Studies and served as Executive Director of
      GALA. She states that the College of Natural and Applied Sciences/CE&O position that he was appointed to
23    requires a broader community focus than she assumes his LGBTQI-related professional experiences provide. *See*
      Compl. at 27, ECF No. 1.

24

areas.[9] Compl. Attach. 7, ECF No. 1. The posting also stated preferred qualifications for individuals with "[s]uccessful, relevant experience and personal networks on Guam and the Pacific Islands and in the Asia-Pacific region"; "[a]ccomplishments in securing grants and contracts, building shared agendas, and negotiating strategic partnerships"; and "[p]roject and outreach program management, contact administration communication, teamwork, problem-solving, and customer service." *Id.* Plaintiff claims that, at the time she applied, the Global Learning Office lacked diversity, and was primarily made up of "individuals around 30 years of age from the Pacific Islander staff members, specifically the Chamorro ethnic group." *Id.* at 11.

On October 27, 2021, Carlos Taitano, Director of Global Learning and Engagement and chair of the position's search committee, and Geena Nuque, a program assistant, emailed Plaintiff about scheduling an interview for the following day. Compl. at 11, ECF No. 1. Before her interview, Plaintiff spoke with Mr. Taitano over the phone to ask questions about the interview, including its duration and who her interviewers would be. *Id.* Plaintiff claims that she received minimal information. *Id.*

Plaintiff interviewed for the position on October 28, 2021, via Zoom. Compl. at 12, ECF No. 1. She was interviewed by Mr. Taitano, Cathleen Moore-Linn, Margaret Hattori-Uchima,[10] and Sharleen Santos-Bamba. *Id.* at 12-13. Plaintiff states that her interviewers were three Chamorro members and one white member who had "resided in Guam for nearly five decades." *Id.* Plaintiff further states that Mr. Taitano and Ms. Moore-Linn "lacked the doctoral

_____

[9] The areas were: (a) "demonstrated entrepreneurial business success"; (b) "professional development, personal enrichment or community programs"; (c) "profitable management of similar operations"; (d) "marketing and/or management of successful, commercial, public and for-profit enterprise"; and (e) "events management both virtual and in-person." Compl. Attach. 7, ECF No. 1.

[10] Dr. Hattori-Uchima has since passed away. Compl. at 13, ECF No 1.

1 qualifications" for their positions and that Dr. Hattori-Uchima had familial ties to the Global

2 Learning Office. *Id.* at 13.

3   Plaintiff takes issue with the formation of the search committee. Specifically, she alleges

4 that the committee was improperly formed because the University policy required that there

5 should have been five members on the committee who were "appointed by the appropriate Vice

6 President and approved by the President."[11] Compl. at 13, ECF No. 1. Plaintiff also alleges that

7 Mr. Taitano was improperly appointed chair of the search committee. *Id.* at 15.

8   On November 30, 2021, Plaintiff received an email from Joseph Gumataotao, the

9 University's Acting Chief Human Resources Officer, informing her that another candidate was

10 selected. *Id.* at 17. The email stated:

11   The University was extremely fortunate to receive responses from a
    number of well qualified candidates for the position of Associate

12   Director, Global Learning and Engagement, Announcement #107-21.
    Upon much deliberation, another candidate has been selected.

13
    We appreciate and thank you for the time you spent applying and

14   interviewing for this position. We wish you success in future endeavors.

15 *Id.* at 17, Attach. 13. Mr. Gumataotao included other HR Office staff members on the email,

16 which Plaintiff states was "inappropriately" done. *Id.* at 18, Attach. 12.

17   Plaintiff alleges that the hiring process concluded with "Ms. [Amanda Francel] Blas, an

18 internal [Global Learning Office] employee, receiving a promotion and a $20,000 (or 42%) pay

19 _____

20 [11] Plaintiff appears to combine a citation to the University's Personnel Rules and Regulations Manual and the Rules,
   Regulations, Policy Manual. *See* Compl. at 13, ECF No. 1. The court assumes that Plaintiff intended to cite to the

21 Rules, Regulations, Policy Manual because it contains the specific provision that she refers to in her Complaint. *Id.*
   A PDF version of that manual is publicly available and can be accessed here:

22 https://www.uog.edu/_resources/files/rrpm/uog-rrpm-Feb-17-2000.pdf. Even so, it appears that Plaintiff misreads
   that policy to require the appointment of five members on page 119 of the Rules, Regulations, Policy Manual.
   Plaintiff also references various Board of Regents' University policies from an "over 400-page EEOC Freedom of

23 Information Act (FOIA) documentation." Compl. at 16, ECF No. 1. Plaintiff did not provide these policies as
   attachments, nor did she reference any specific provisions and, therefore, the court will not consider them at this

24 time.

1  increase after just 30 months, facilitated by her ethnic peers on the interview or search

2  committee, including her supervisor, the [Global Learning and Engagement] Director." Compl.

3  at 16, ECF No. 1. Plaintiff claims that she was the only candidate, among three others, who

4  possessed a doctoral degree and "robust background in global learning and engagement,

5  including significant experience in instruction, research, and service at a senior level." *Id.* at 16.

6  On December 1, 2021, Plaintiff filed a written complaint against the search committee

7  with Mr. Gumataotao. Compl. at 18, Attach. 13, ECF No. 1. In her email, Plaintiff stated that the

8  University's failure to hire her was part of a pattern of promoting "less qualified local Pacific

9  Islanders though inadequate hiring procedures." *Id.* Mr. Gumataotao provided Plaintiff with

10  information about how to file an Equal Employment Opportunity ("EEO") charge claim. *Id.* at

11  Attach. 13.

12  On January 7 and January 10, 2022, Plaintiff spoke with the University's EEO counselor,

13  Ms. Darlene Blas,[12] who, Plaintiff claims, did not take subsequent action on her complaint.

14  Compl. at 19, ECF No. 1. Then, Plaintiff alleges that Mr. Gumataotao, as Acting Chief Human

15  Resources Officer, "made the complaint process a deadlock." *Id.* at 19. Plaintiff eventually

16  informed the University's HR Office that she would escalate her complaint to the EEOC. *Id.* at

17  20.

18  **II.    Relevant Procedural History**

19  Plaintiff filed a charge of discrimination with the EEOC on April 28, 2022 ("EEOC

20  Charge"). Compl. at 6, Attach. 1, ECF No. 1 (EEOC Charge No. 486-2022-00620). Plaintiff's

21  EEOC Charge claimed discrimination on the basis of "Race (Asian), National Origin (Korean)

22  _____

23  [12] Plaintiff refers to Ms. Blas's first name as "Darleen" throughout her Complaint. *E.g.*, Compl. at 19, ECF No. 1.
The court uses the proper spelling of Ms. Blas's name, "Darlene," as indicated in her emails with Plaintiff. *See id.* at

24  Attach. 13.

and Age (53) in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967" for not being hired for Associate Director of Global Learning and Engagement despite being "well qualified." *Id.* at Attach. 1. Plaintiff also claimed that she was "retaliated against for complaining about discrimination" to Mr. Gumataotao as the University's Acting Chief Human Resources Officer. *Id.* The EEOC issued Plaintiff a Notice of Right to Sue letter on August 24, 2023. *Id.* at Attach. 3.

On November 21, 2023, Plaintiff filed her Complaint in this court, alleging that the Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Compl. at 3, ECF No. 1. Specifically, Plaintiff alleges that Defendants discriminated against her on the basis of race, national origin, and age for failing to hire her for the position of Associate Director of Global Learning and Engagement and for setting unequal terms and conditions of her employment. *Id.* at 4. Plaintiff also alleges that Defendants retaliated against her for past EEOC claims she filed against the University. *Id.* at 4.

On December 11, 2023, twenty days after Plaintiff filed her Complaint, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF Nos. 18-19. Defendants argue that Plaintiff failed to state a claim upon which relief can be granted because (1) she alleged insufficient facts to support her claims of discrimination under Title VII and the ADEA, and (2) the court lacks jurisdiction because six of the individual defendants were not included in Plaintiff's EEOC Charge and because some of Plaintiff's claims are untimely. Mot. at 5, ECF No. 19. However, on December 14, 2023, Defendants' counsel received notice from the clerk's office that their Motion to Dismiss was deficiently filed because counsel failed to file Notice to Pro Se Litigations re Rule 12 Motions under Civil Local Rule 12 and a certificate of

1  service following their Motion to Dismiss. ECF No. 21. Defendants cured these deficiencies on

2  December 15, 2023. ECF Nos. 22, 24.

3        On December 21, 2023, Plaintiff filed a Request for Entry of Default, arguing that

4  Defendants' failure to timely file warrants entry of default. Request at 2-3, ECF No. 29-1. And,

5  on December 26, 2023, Defendants filed their opposition to this request explaining the

6  procedural history described above. Obj. to Request at 1-3, ECF No. 30. Plaintiff filed a reply on

7  January 18, 2024,[13] arguing that Defendants' deficiency caused her "procedural and substantive

8  prejudice." Resp. at 3, ECF No. 35.

9        On January 2, 2024, Plaintiff filed her Opposition to Defendants' Motion to Dismiss.

10  ECF No. 31. Defendants filed their Reply on January 16, 2024. ECF No. 34.

11  **III.  Jurisdiction and Venue**

12        Plaintiff's Title VII and ADEA claims are properly within the court's subject matter

13  jurisdiction. 28 U.S.C § 1331 (federal question jurisdiction); 42 U.S.C. § 2000e-5(f)(3) (Title

14  VII's jurisdictional provision); 29 U.S.C. § 626(c)(1) (ADEA's jurisdictional provision); *see also*

15  *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 550-51 (2019); *Noise v. Ass'n of Flight*

16  *Attendants--CWA, AFL-CIO*, 722 F. Supp. 2d 1181, 1190 (D. Haw. 2010). Venue is proper

17  because a substantial part of the events described in Plaintiff's complaint occurred on Guam. *See*

18  28 U.S.C. § 1391(b)(1).

19  **IV.  Standard of Review**

20        A complaint must contain "a short and plain statement of the claim showing that the

21  pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss for failure to

22

23  _____

24  [13] The court notes that litigants are ordinarily required to serve and file replies within fourteen days of the filing of
an opposition, which would make Plaintiff's reply due on January 9, 2024. *See* CVLR 7(f).

1   state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must assert factual

2   allegations that "suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp!*

3   *Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014) (citation omitted). A claim has a plausible chance

4   of success if it "allows the court to draw the reasonable inference that the defendant is liable for

5   the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

6   *Twombly*, 550 U.S. 544, 556 (2007)). The court must "draw on its judicial experience and

7   common sense" to determine the plausibility of a claim given the specific context of each case.

8   *Id.* at 679.

9         The court's review is limited to the contents of the complaint. *See Noise*, 722 F. Supp. 2d

10   at 1191 (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). However,

11   the court may consider certain materials outside the complaint, such as its attachments. *Id.* (citing

12   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). And while the court must accept all

13   factual allegations in the complaint as true and construe the pleadings in the light most favorable

14   to the nonmoving party, it is not required to accept legal conclusions "couched as . . . factual

15   allegation[s]" as true. *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. 544, 555); *Manzarek v.*

16   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

17         The court liberally construes pro se complaints because it has a "duty to ensure that pro

18   se litigants do not lose their right to be heard . . . due to ignorance of procedural requirements."

19   *Redd-Oyedele v. Santa Clara Cnty. Off. of Educ.*, 2023 WL 2769093, at *2 (N.D. Cal. Mar. 31,

20   2023) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 969, 699 (9th Cir. 1988)); *see also*

21   *Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th

22   Cir. 2012). Nonetheless, the court will not "supply essential elements of the claim that were not

23   initially pled." *Redd-Oyedele*, 2023 WL 2769093, at *2 (citing *Rupert v. Bond*, 68 F. Supp. 3d

24

1142, 1153 (N.D. Cal. 2014); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

**V.    Discussion**

Defendants argue two principal points in their Motion to Dismiss. First, Plaintiff's Complaint should be dismissed because she alleges insufficient facts to support her Title VII and ADEA claims. Mot. at 5, ECF No. 19. Second, Plaintiff's Complaint should be dismissed because the court lacks jurisdiction to hear Plaintiff's Complaint in four respects. *Id.*

The court first addresses Defendants' jurisdictional arguments because they seek to limit the court's ability to hear this case.

**A. Defendants' "Jurisdictional" Arguments**

Defendants argue that the court does not have jurisdiction with respect to certain aspects of Plaintiff's Complaint case because (1) the Plaintiff did not name the six Individual Defendants in her EEOC Charge; (2) the Individual Defendants are employees and not employers; (3) some of Plaintiff's claims are untimely; and (4) some of Plaintiff's allegations are being raised for the first time and she has not exhausted her administrative remedies. Mot. at 5, 20-25, ECF No. 19. The court addresses each argument in turn but, as will be explained, arguments styled as "jurisdictional" are analyzed for failure to state a claim, not for lack of jurisdiction.

**1. Individual Defendants Omitted from Plaintiff's EEOC Charge**

Defendants first argue that the court lacks jurisdiction to hear Plaintiff's claims against the Individual Defendants because she did not name them in her EEOC Charge, thus failing to provide notice and an opportunity to respond during the administrative proceedings. Mot. at 20-21, ECF No. 19. Plaintiff argues that she included the Individual Defendants in her complaint based on their "direct involvement and influential roles in the alleged discriminatory practices." Opp'n at 26-27, ECF No. 31.

1    Defendants raise this argument as a "jurisdictional bar" to the court hearing Plaintiff's

2   claims but cite to *Sanchez v. Pacific Power Co.*, 147 F.3d 1097 (9th Cir. 1998), for the

3   proposition that failure to name an employer "is not a jurisdictional bar." Mot. at 21, ECF No.

4   19. Although the court recognizes that Plaintiff's failure to include all Individual Defendants in

5   her EEOC Charge may be a reason to have the claims against those defendants dismissed, it is

6   not a jurisdictional bar. Rather, naming employers in an EEOC charge is a condition precedent to

7   filing an action that is properly analyzed as a failure to state a claim under Title VII and the

8   ADEA. *See, e.g.*, *Nowick v. Gammell*, 351 F. Supp. 2d 1025, 1035 (D. Haw. 2004) (finding that

9   failure to include a defendant in an EEOC charge is not a jurisdictional bar under Title VII);

10  *Sanchez*, 147 F.3d at 1101 (same under the ADEA).

11    Turning to the substance of Defendants' argument, although plaintiffs may generally only

12  sue those named in the EEOC charge, there are exceptions to this rule. *Sosa v. Hiraoka*, 920 F.2d

13  1451, 1458 (9th Cir. 1990). "Defendants not named in the EEOC complaint can be sued under

14  Title VII where such individuals should have anticipated being named in a Title VII action

15  arising from the complaint." *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir.

16  2005) (citing *Sosa*, 920 F.2d at1458); *see also Ortez v. Washington County, State of Or.*, 88 F.3d

17  804, 808 (9th Cir. 1998). In fact, "[w]here the EEOC or defendants themselves 'should have

18  anticipated' that the claimant would name those defendants in a Title VII suit, the court has

19  jurisdiction over those defendants even though they were not named in the EEOC charge." *Sosa*,

20  920 F.2d at 1458-59. The same is true for claims made under the ADEA. *See, e.g.*, *Bryant v.*

21  *OptumRX Pharmacy, Inc.*, 2016 WL 10592413, at *3 (C.D. Cal. Apr. 29, 2016).

22    Plaintiff's EEOC Charge names Defendants University of Guam and Gumataotao.

23  Compl. at 32, ECF No. 1. The University is named as the employer, and Mr. Gumataotao is

24

1   named in the particulars section. Compl. Attach. 1, ECF No. 1. In this respect, Plaintiff properly

2   named both as defendants because she included them in her EEOC Charge. *See Sosa*, 920 F.2d

3   1458.

4          Unlike Mr. Gumataotao, Plaintiff did not name the remaining Individual Defendants—

5   Enriquez, Camacho, Taitano, Santos-Bamba, or Moore-Linn—in her EEOC Charge. *See* Compl.

6   Attach. 1, ECF No. 1. Nonetheless, it is reasonable to assume that certain Individual Defendants

7   should have anticipated being named in Plaintiff's Complaint. *See Sosa*, 920 F.2d at 1458-59;

8   *Bryant*, 2016 WL 10592413, at *3. Ms. Enriquez is a proper defendant in this case because she

9   appointed the Search Committee for the Associate Director position and can reasonably

10  anticipate having been named in this action due to her role in selecting the employees who would

11  select and interview candidates. *See* Compl. at 13-14, ECF No. 1; *Nat'l Educ. Ass'n, Alaska*, 422

12  F.3d at 847. Plaintiff also properly named Mr. Taitano as a defendant because he chaired the

13  Search Committee for the Associate Director of Global Learning and Engagement and could

14  reasonably expect being named for his responsibilities on the Search Committee. *See* Compl. at

15  13, ECF No. 1; *Nat'l Educ. Ass'n, Alaska*, 422 F.3d at 847. Similarly, Plaintiff properly named

16  Ms. Santos-Bamba and Ms. Moore-Linn as defendants because they were members of the Search

17  Committee. *See* Compl. at 13, ECF No. 1; *Nat'l Educ. Ass'n, Alaska*, 422 F.3d at 847.

18         Like the other Individual Defendants, Plaintiff did not name Mr. Camacho in her EEOC

19  Charge. *See* Compl. Attach. 1, ECF No. 1. However, unlike the other Individual Defendants,

20  Plaintiff did not sufficiently allege facts that would support Mr. Camacho, as the University's

21  attorney, from being named in this case. Plaintiff only identifies Mr. Camacho as explaining how

22  the search committee was appointed and the process for hiring decisions in his response to

23

24

Plaintiff's EEOC Charge.[14] *Id.* at 13-16. Thus, Mr. Camacho cannot reasonably be expected to anticipate being named in Plaintiff's Complaint as alleged.

Accordingly, Defendants' Motion to Dismiss is denied regarding Plaintiff's inclusion of Defendant Gumataotao. Defendants' Motion to Dismiss is also denied regarding Plaintiff's inclusion of Defendants Enriquez, Taitano, Santos-Bamaba, and Moore-Linne. Finally, Defendants' Motion to Dismiss is granted, allowing Plaintiff leave to amend, regarding her inclusion of Mr. Camacho in the Complaint should she be able to allege facts sufficient to show his role in the alleged discrimination and retaliation.[15]

### 2. Individual Defendants in Their Personal Capacities

Second, Defendants argue that the court lacks jurisdiction over Plaintiff's claims against the Individual Defendants under both Title VII and the ADEA because the statutes limit civil liability to *employers*. Mot. at 21-22, ECF No. 19. Defendants also argue that the court lacks jurisdiction because, even when individuals can be sued as employers, they must be named in their official capacities, which Plaintiff has not done. *Id.* Plaintiff counters that she named the Individual Defendants because they "significantly influenced [her] employment conditions and decisions" "by virtue of their positions [as University officials] and actions." Opp'n at 27-28, ECF No. 31.

The court again notes that Defendants raise this argument as a jurisdictional bar that is more accurately analyzed as a failure to state a cognizable claim for liability under Title VII and the ADEA. *Cf. Sanchez*, 147 F.3d at 1101.

---

[14] Plaintiff references Mr. Camacho's response to her EEOC Charge as Attachment 10 to her Complaint which, as noted above, was not filed. *See supra* note 4.

[15] The court addresses Plaintiff's leave to amend at greater length below.

The court agrees with the Defendants with respect to their argument that the Plaintiff cannot bring claims against the Defendants in their individual capacities. "The liability schemes under Title VII and ADEA 'both limit civil liability to the employer.'" *Bounchanh v. Wa State Health Care Auth.*, 2019 WL 6052405, at *4 (W.D. Wash. Nov. 15, 2019) (quoting *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993) ("Congress did not intend to impose individual liability on employees. Title VII [and the ADEA] limit[] liability to employers with fifteen or more employees.")). Individuals may only be held liable in their official capacities under the theory of respondeat superior. *See Miller*, 991 F.2d at 587-88; *Ortez*, 88 F.3d at 808.

Accordingly, Defendants' Motion to Dismiss is granted with respect to Plaintiff's Title VII and ADEA claims against the Individual Defendants in their individual capacities. The court finds, however, that Plaintiff alleged sufficient information about the Individual Defendants' positions at the University and their role as agents of the University to have sufficiently alleged the Individual Defendants in their official capacities. *See Ortez*, 88 F.3d at 808; *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[The court has] an obligation where the p[laintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally to afford the p[laintiff] the benefit of any doubt.")). In this regard, Defendants' Motion to Dismiss is denied.[16]

### 3. Untimely Claims

Next, Defendants argue that the court lacks jurisdiction to hear Plaintiff's claims because her allegations are untimely, particularly with respect to events that occurred before November 30, 2021 (180 days before Plaintiff filed her EEOC Charge). Mot. at 23-24, ECF No. 19. The

---

[16] The court notes that if Plaintiff chooses to amend her Complaint in accordance with this Decision and Order, she is encouraged to clarify that she names the Individual Defendants in their official capacities.

1   court understands Plaintiff's opposition to be that her allegations fall under the "continuing

2   violation doctrine" and should therefore be considered. Opp'n at 28, ECF No. 31. The court

3   largely agrees with the Defendants but differs in one respect.

4         Defendants' argument that the untimeliness of Plaintiff's allegations is a jurisdictional

5   bar in this case is incorrect. "Title VII's charge-filing requirement is a processing rule, albeit a

6   mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."

7   *Davis*, 587 U.S. at 551. This also applies to the ADEA. *See Ahmed v. Wormuth*, 2023 WL

8   4205765, at *5 (N.D. Cal. June 26, 2023); *cf. Bounchanh*, 2019 WL 6052405, at *4 (citing 29

9   U.S.C. § 626(e)). Thus, the court considers Defendants' argument regarding Plaintiff's adherence

10   to Title VII's and the ADEA's procedural obligations under Rule 12(b)(6), not as a question of

11   its jurisdiction under Rule 12(b)(1).

12         A plaintiff must file an EEOC charge within 180 days "after the alleged unlawful

13   employment practice occurred" under both Title VII and the ADEA. 42 U.S.C. § 2000e-5(e)(1);

14   29 U.S.C. § 626(d)(1)(A); *see also Nat'l R.R. Passenger Corp .v. Morgan*, 536 U.S. 101, 122

15   (2002) (explaining how "each discrete [discriminatory] act starts a new clock for filing charges

16   alleging that act"). When the EEOC receives a charge, the employer is notified and the EEOC

17   investigates the allegations. *Davis*, 587 U.S. at 544. At that point, the EEOC either finds

18   "reasonable cause" to believe the charge is true or, as it did here, determines that there is "no

19   reasonable cause to believe that the charge is true." *Id.* at 544-45. In the later circumstance, the

20   EEOC dismisses the charge and notifies the complainant of their right to sue. *Id.* at 545. The

21   complainant must then commence a civil action against the allegedly offending employer within

22   90 days. *Id.*

23         Here, Plaintiff alleged unlawful employment practices that occurred between August 26,

24

1   2021—the date she applied for Associate Director of Global Learning and Engagement— and

2   November 30, 2021—the date she was informed that she was not selected for the position.

3   Compl. Attach. 1, ECF No. 1. Plaintiff's 180-day clock began on November 30, 2021, as the date

4   of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A).

5   Plaintiff timely filed her EEOC Charge on April 28, 2022, about one month before the 180-day

6   deadline. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A). However, Plaintiff alleges

7   several other positions that she applied to and was rejected for before November 30, 2021. *See*

8   *supra* 2-5. To the extent that Plaintiff's claims are based on events that occurred before

9   November 30, 2021, Plaintiff has failed to allege that she exhausted administrative remedies for

10  those events. Those allegations are time barred under Title VII and the ADEA. *See Barker v.*

11  *McFerran*, 2023 WL 6933357, at *3-4 (N.D. Cal. Oct. 18, 2023)

12      Plaintiff argues that the court should nonetheless consider her allegations prior to

13  November 30, 2021, timely because of the "continuing violations doctrine." Opp'n at 28, ECF

14  No. 31. Defendants argue that the continuing violation doctrine does not apply to Plaintiff

15  because it does not apply to discrete acts of discrimination. Reply at 16, ECF No. 34. The court

16  agrees with Defendants.

17      The continuing violation doctrine allows a court to consider alleged unlawful conduct

18  that would otherwise be time-barred. *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir.

19  2003) (citing *Morgan*, 536 U.S. at 122). In the context of claims made under Title VII and the

20  ADEA, the continuing violations doctrine is only applicable to hostile work environment claims,

21  not claims for discrimination (e.g., failure to hire) or retaliation. *See Morgan*, 536 U.S. at 105,

22  114 (holding that "[e]ach incident of discrimination and each retaliatory adverse employment

23  decision constitutes a separate actionable 'unlawful employment practice'"). Unlike in hostile

24

1 work environment claims, claims for discrimination and retaliation constitute "discrete conduct"

2 that are not actionable unless they occur within the statutory time period, "even when they are

3 related to acts alleged in timely filed charges." *Id.* at 113, 115.

4      Therefore, Plaintiff's claims of discrimination that predate November 30, 2021, are time

5 barred because the Complaint fails to allege that Plaintiff exhausted her administrative remedies

6 for those acts.[17] *See Barker*, 2023 WL 6933357, at *3-4. The court grants Defendants' Motion to

7 Dismiss regarding allegations of discrimination that occurred prior to November 30, 2021.[18]

8      **4. Administrative Exhaustion of New Allegations**

9      Finally, Defendants' last jurisdictional argument pertains to the court's supposed lack of

10 jurisdiction to consider Plaintiff's Title VII claims because some of her allegations were not

11 included in the EEOC Charge. Mot. at 24, ECF No. 19. Specifically, Defendants argue that

12 Plaintiff's allegations of "various critical procedural failures in the handling of her EEO

13 complaint to UOG about her not being hired for the Associate Director of Global Learning and

14 Engagement position in January, 2022" should not be considered because Plaintiff raised them

15 for the first time in her Complaint. *Id.* at 25. Plaintiff counters that her inclusion of these

16 procedural failures in the handling of her EEO complaint is "warranted due to the emergent

17 nature of these adverse actions" and "constitute significant indirect evidence in [her] claims of

18 race, national origin, and age-based case of discrimination." Opp'n at 29, ECF No. 31.

19      The court again notes that Title VII's charge-filing requirement is "not a jurisdictional

---

[17] The court notes that "[p]rior, time-barred acts may not form the basis for liability, but may nevertheless be admissible as background evidence in support of a timely claim." *Lelaind v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1092 n.4 (N.D. Cal. 2008) (noting, however, that this determination is governed by the Federal Rules of Evidence).

[18] If Plaintiff amends her Complaint, she must focus on facts that are related to her failure to be hired on November 30, 2021 (i.e., the time frame referenced in her EEOC Charge).

1  prescription delineating the adjudicatory authority of the courts." *Davis*, 587 U.S. at 551. The

2  court analyzes Defendants' argument under Rule 12(b)(6) for failure to state a claim.

3       "Substantial compliance" with administrative exhaustion is required under Title VII. *See*

4  *Williams v. Wolf*, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019) (citing *Sommatino v.*

5  *United States*, 255 F.3d 704, 708 (9th Cir. 2001)); *cf. Sosa*, 920 F.2d at 1456. The court's review

6  of a plaintiff's allegations depends upon the "scope of both the EEOC charge and the EEOC

7  investigation." *Sommatino*, 255 F.3d at 709 (quoting *Paige v. State of California*, 102 F.3d 1035,

8  1041 (9th Cir. 1996)). "Substantial compliance" with administrative exhaustion means that the

9  court may consider allegations in a complaint that are not in the EEOC charge if the allegations

10  are "like or reasonably related to the allegations contained in the EEOC charge." *Sosa*, 920 F.2d

11  at 1456 (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir.

12  1989)). An allegation is "like or reasonably related to allegations contained in the EEOC charge"

13  if "the original EEOC investigation would have encompassed the additional charges," or they

14  "fall within the EEOC investigation which can reasonably be expected to grow out of the charge

15  of discrimination." *Green*, 883 F.2d at 1476 (explaining further that the remedial purpose of Title

16  VII warrants a liberal construction of this requirement); *Sommatino*, 255 F.3d at 709 (citing

17  *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000)).

18       Plaintiff alleges facts that occurred after November 30, 2021. Specifically, Plaintiff

19  alleges that she attempted to speak with the University about the alleged discrimination on

20  January 7 and 10, 2022. Compl. at 18, ECF No. 1. She further alleges that she spoke with Ms.

21  Darlene Blas about her employment discrimination complaint, and that Ms. Blas took no action

22  on her complaint. *Id.* at 19. Finally, Plaintiff alleges that Mr. Gumataotao further inhibited the

23  progress of her internal complaint after he assumed the role of Acting Chief Human Resources

24

Officer. *Id.* These facts, as alleged after November 30, 2021, are "reasonably related to" Plaintiff's allegations in her EEOC Charge. *See Sosa*, 920 F.2d at 1456. Plaintiff alleged attempts to file an EEO complaint with the University regarding her rejection from the Assistant Director of Global Learning and Engagement position can reasonably be assumed to have grown out the conduct alleged in her EEOC Charge. *See Green*, 883 F.2d at 1476. Therefore, the court finds that the facts Plaintiff alleged after November 30, 2021, are reasonably related to the EEOC charge, and the court may consider them.

Defendants' Motion to Dismiss with respect to allegations of Plaintiff's "various critical procedural failures" after November 30, 2021, is therefore denied.

## B. Plaintiff's Discrimination Claims

Having addressed Defendants' arguments above and determined the relevant scope of Plaintiff's allegations for consideration, the court turns to Defendants' arguments regarding whether Plaintiff's Title VII and ADEA claims fail to state a claim upon which relief can be granted. To briefly summarize, the court has limited its review to allegations of discrimination on the basis of race, national origin, and age and her allegations of retaliation as they related to her failure to be hired for Assistant Director of Global Learning and Engagement on November 30, 2021. The court has further limited the named Defendants, such that the University and all Individual Defendants—except Mr. Camacho who has been dismissed—are to be considered in their official capacities only.

Plaintiff alleges that Defendants discriminated against her based on her race and national origin, in violation of Title VII, and her age, in violation of the ADEA. Compl. at 9, Attach. 1, ECF No. 1. Plaintiff's Complaint indicates three categories of discriminatory conduct: (1) failure to hire; (2) unequal terms and conditions of employment; and (3) retaliation. Compl., ECF No. 1.

Defendants move to dismiss arguing that Plaintiff has no direct evidence of discrimination, fails to allege a prima facie case of discrimination, and does not allege plausible claims for discrimination. Mot. at 8-20, ECF No. 19.

Before addressing the sufficiency of Plaintiff's allegations of discrimination and retaliation, the court first addresses Defendants' argument about Plaintiff's supposed need for "direct evidence of discrimination." Mot. at 8-9, ECF No. 19. Contrary to what Defendants seem to suggest, Plaintiff is not required to prove her discrimination and retaliation claims at this stage. Rather, Plaintiff is only required to assert factual allegations that "suggest that the claim has at least a plausible chance of success." *Levitt*, 765 F.3d at 1134-35. And even if Plaintiff was required to prove her claims of discrimination at this stage, direct or circumstantial evidence may be submitted. *See Brooks-Joseph v. City of Seattle*, 697 F. Supp. 3d 1085, 1097 (W.D. Wash. 2023), *reconsideration denied*, 2024 WL 1173802 (W.D. Wash. Mar. 19, 2024).

### 1. Title VII Disparate Treatment Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may demonstrate discrimination under a theory of disparate treatment. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Disparate treatment occurs when an employer "has treated a particular person less favorable than others because of a protected trait." *Id.* (internal quotations omitted) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988)). A plaintiff must show, through direct or circumstantial evidence, that the "motive to discriminate was one of the employer's motives." *E.g.*, *Kamara v. Adams & Assocs., Inc.*, 2017 WL 4340255, at *2 (E.D. Cal. Sept. 29, 2017); *see*

1    *also Bayless v. Bd. of Trs. of Clark Cnty. Sch. Dist.*, 2022 WL 5206659, at \*3 (D. Nev. Oct. 4,

2    2022).

3          Generally, a claim for disparate treatment requires Plaintiff to sufficiently allege that:

4    (1) she is a member of a protected class; (2) she is qualified for her position; (3) she experienced

5    an adverse employment action; and (4) similarly situated individuals outside her protected class

6    were treated more favorably, or other circumstances indicate discriminatory intent. *See Sheets v.*

7    *City of Winslow*, 859 F. App'x 161, 162 (9th Cir. 2021) (quoting *Peterson v. Hewlett-Packard*

8    *Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *see also Welch v. Or. Health & Sci. Univ.*, 2024 WL

9    3106930, at \*5-6 (D. Or. May 17, 2024) (citing, e.g., *Sheppard v. David Evans & Assocs.*, 694

10    F.3d 1045 (9th Cir. 2012)) (discussing how the elements of a prima facie case are relevant to a

11    court's assessment of whether a plaintiff meets the pleading standard). Additionally, "adverse

12    employment action[s] must be significant, and trivial harms such as petty slights or minor

13    annoyances are not actionable." *Green v. City & Cnty. of San Francisco*, 2021 WL 3810243, at

14    \*32 (N.D. Cal. Aug. 26, 2021) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68

15    (2006); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

16          Failure to hire is a common manifestation of disparate treatment. *Brooks-Joseph*, 697 F.

17    Supp. 3d at 1097 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). As

18    adapted to fail-to-hire claims, a plaintiff must show the following to plausibly allege a claim for

19    disparate treatment under Title VII: (a) she belongs to a protected class; (b) she was qualified for

20    the position; (c) she was rejected despite her qualifications; and (d) the position remained open.

21    *McDonnell Douglas*, 411 U.S. at 802.

22          Of the four factors, Plaintiff only plausibly alleges the first. Plaintiff correctly indicates

23    that she belongs to a protected class with respect to race and national origin. In both her EEOC

24

1  Charge and Complaint, Plaintiff identifies that she is Asian and a Korean national. *E.g.*, Compl.

2  at 9, 14-18, Attach. 1, ECF No. 1. Plaintiff does not, however, plausibly allege the remaining

3  three factors. In numerous instances throughout her Complaint, Plaintiff references that she "a

4  more qualified Korean professional," and that Ms. Amanda Francel Blas was "less qualified (i.g.

5  [sic], lack of the highest standard of expertise and experience in instruction, research, and

6  services) or unqualified (i.e., with no earned doctoral degree)." Compl. at 15, ECF No. 1. Yet

7  Plaintiff does not specifically allege how she was actually qualified for the Associate Director

8  role. Rather, she relies on the assumption that she "was the singular applicant possessing an

9  earned doctoral degree and a robust background in global learning and engagement, including

10 significant experience in instruction, research, and service at a senior level." *Id.* at 15-16, 28.

11 Additionally, Plaintiff failed to include relevant attachments, including Attachments 4 and 8, that

12 may shed light on her qualifications for the position. Regardless, Plaintiff appears to overlook the

13 stated requirements for the Associate Director of Global Learning and Engagement position as

14 posted by the University. For example, the minimum requirements are a master's degree (not a

15 doctoral degree) and "progressively responsible leadership experience in two or more" listed

16 areas. Compl. Attach. 7, ECF No. 1. Even though Plaintiff alleges that she was rejected for the

17 position, she has also not alleged that the position remained open or that "similarly situated

18 individuals outside her protected class were treated more favorably." *See McDonnell Douglas*,

19 411 U.S. at 802. Instead, Plaintiff only indicates that Ms. Blas was hired in her place, was less

20 qualified, and had "close ties" to the Search Committee who shared "Chamorro ethnicity and

21 worldview." Compl. at 15-16, ECF No. 1.

22      Plaintiff also indicated that she experienced "unequal terms and conditions of

23 employment." Compl. at 4, ECF No. 1. Other than identifying her membership in a protected

24

class, Plaintiff has not sufficiently alleged that she was qualified for the position, what the unequal terms and conditions of employment were, or that similarly situated individuals outside her protected class were treated more favorably. *See Sheets*, 859 F. App'x at 162. Although Plaintiff alleges that one-day notice for her interview was "highly irregular" and "unprofessional" and takes issue with how the Search Committee was formed, Plaintiff has not sufficiently alleged nonconclusory allegations sufficient to plead elements of discrimination under Title VII. Compl. at 3-4, ECF No. 1.

Although detailed factual pleadings are not required, Plaintiff must allege more than conclusory allegations. *See Iqbal*, 556 U.S. at 679. Plaintiff has not alleged facts sufficient to suggest that her Title VII discrimination claims have even "a plausible chance of success" on the merits. *See Levitt*, 765 F.3d at 1134-35. Accordingly, the court grants Defendants' Motion to Dismiss, but allows Plaintiff leave to amend.

### 2. ADEA Disparate Treatment Claims

The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). As under Title VII, a plaintiff may demonstrate discrimination under the ADEA under a theory of disparate treatment. *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990) (explaining that disparate treatment alleged under the ADEA requires Plaintiff to allege that "the employer treats some people less favorably than others because of their age"). Unlike Title VII, however, the ADEA requires that claims of age discrimination allege that age was the "but-for" cause of the employer's adverse

1  decision. *See Barnes v. Saul*, 840 F. App'x 943, 945 n.1 (9th Cir. 2020) (citing *Babb v. Wilkie*,

2  589 U.S. 399, 402 (2020)); *see also* Bayless, 2022 WL 5206659, at *3; *Hazen Paper Co. v.*

3  *Biggins*, 507 U.S. 604, 606 (1993) ("[T]here is no disparate treatment under the ADEA when the

4  factor motivating the employer is some feature other than the employee's age.").

5        Under the ADEA, for a failure to hire claim, a plaintiff must plausibly allege that she was

6  (1) at least forty years old, (2) qualified for the position for which an application was submitted,

7  (3) denied the position, and (4) the position was given to a substantially younger person. *See*

8  *Barker*, 2023 WL 6933357, at *3 (citing *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012))

9  (failure to promote).

10       Here, Plaintiff does not sufficiently allege facts that support the inference that she was

11  not hired or treated differently with respect to her terms and conditions of employment because

12  of her age. As in her Title VII claims, Plaintiff has only alleged that she falls beyond the proper

13  age threshold (over forty years old) and was rejected for the position. *See* Compl. at 4, Attach. 1,

14  ECF No. 1. Plaintiff has also not sufficiently alleged that she was qualified for the position or

15  that her comparators were "substantially younger" than her, and that she was treated differently

16  because of it. *See Barker*, 2023 WL 6933357, at *3. Plaintiff only alleges that the Global

17  Learning Office "consisted predominately of individuals around 30 years of age" and that Ms.

18  Blas was "a less qualified younger" applicant "close to 30 years of age." Compl. at 11, 17-18,

19  ECF No. 1.

20       Plaintiff has also indicated that she experienced "unequal terms and conditions of

21  employment." *Id.* at 4. But, as above, Plaintiff does not sufficiently allege facts supporting the

22  inference that she was treated differently regarding her "terms and conditions of employment"

23  because of her age.

24

1  Accordingly, the court grants Defendants' Motion to Dismiss regarding Plaintiff's ADEA

2  claims, but allows Plaintiff leave to amend.

3  **3. Retaliation**

4  Plaintiff also alleges that she was retaliated against in violation of Title VII and the

5  ADEA. Compl. at 4, 10, ECF No. 1. Defendants move to dismiss, arguing that there is "no direct

6  evidence that the non-selection of the Plaintiff for the Associate Director of Global Learning and

7  Engagement position was an act of retaliation." Mot. at 14, ECF No. 19.

8  Title VII and the ADEA make it unlawful for an employer to retaliate against an

9  employee because the employee "has opposed any practice made an unlawful employment

10  practice." 42 U.S.C. § 2000e-3(a); *see also* 29 U.S.C. § 623(d) (ADEA); *Poland v. Chertoff*, 494

11  F.3d 1174, 1180 n.1 (9th Cir. 2007) (explaining how Title VII and ADEA anti-retaliation

12  provisions are parallel statutes). A claim for retaliation under both Title VII and the ADEA

13  requires the plaintiff to plausibly allege that "(1) [she] engaged in a protected activity; (2) [her]

14  employer subjected [her] to an adverse employment action; and (3) a causal link exists between

15  the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir.

16  2000) (Title VII); *see also Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997)

17  (explaining that cases interpreting Title VII are "frequently relied upon in interpreting" the

18  ADEA)). A plaintiff need not make a prima facie case for retaliation. Rather, only a short and

19  plain statement of the claim showing that they are entitled to relief is necessary. *Ortez*, 88 F.3d at

20  808.

21  Plaintiff has not met this threshold. Plaintiff's Complaint has not clearly alleged what

22  protected activities she believes were the subject of retaliation beyond conduct that occurred

23  prior to November 30, 2021 (which she characterizes as "retaliation subsequent to my objections

24

1  to [discriminatory] practices" that occurred in between 2007 and 2010), and her interactions with

2  the HR Office between December 2021 and April 2022 after she made her EEO complaint.

3  Compl. 10, 19-20. Plaintiff further fails to allege a "causal link" between the protected activity

4  and the adverse action. *Ray*, 217 F.3d at 1240; *see also Barker*, 2023 WL 9633357, at *7.

5        Accordingly, the court grants Defendants' Motion to Dismiss with respect to Plaintiff's

6  retaliation claim, but allows the Plaintiff leave to amend in light of the foregoing.

7      **C. Leave to Amend**

8        "Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when

9  justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

10  The court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory

11  motivate on part of the movant, repeated failure to cure deficiencies by amendments previously

12  allowed, undue prejudice to the opposing party, [or] futility of amendment." *Id.* (quoting *Foman*

13  *v. Davis*, 371 U.S. 178, 182 (1962)). But dismissal without leave to amend is generally improper

14  unless it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v.*

15  *Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007); *see also Lopez v. Smith*, 203 F.3d 1122, 1131

16  (9th Cir. 2000) (discussing how the "rule favoring liberality in amendments to pleadings is

17  particularly important for the pro se litigant").

18        As alleged, Plaintiff's theory regarding the Defendants' discrimination and retaliation

19  against her is factually insufficient to survive dismissal under Rule 12(b)(6). Even so, the court

20  does not find any of the aforementioned factors from *Foman v. Davis* weighing in favor of

21  denying Plaintiff leave to amend. *See Carvalho*, 629 F.3d at 892. Therefore, Plaintiff is allowed

22

23

24

leave to amend her Complaint within **60 days** of this Decision and Order.[19] Plaintiff must plead

additional, specific facts regarding the alleged discrimination and retaliation related to her

application and rejection for Assistant Director of Global Learning and Engagement to survive

the applicable pleading standard.[20] In particular, Plaintiff should consider:

- Alleging Mr. Camacho's role, in his official capacity as the University's General

  Counsel, in her Title VII and ADEA discrimination and retaliation claims, if applicable,

  as explained *supra* Section V(A)(1);

- Specifying that the Individual Defendants are being sued in their official, not personal,

  capacities, if applicable, as explained *supra* Section V(A)(2); and

- Alleging, with greater specificity, her claims for disparate treatment and retaliation under

  Title VII and the ADEA, including the factors articulated *supra* Section V(B), if

  applicable.

If Plaintiff does not replead within the time frame provided, her Complaint will be dismissed.

**VI.    Plaintiff's Request for Default**

　　　　After Defendants filed their Motion to Dismiss, Plaintiff filed a Request for Default on

December 21, 2023. ECF No. 29-1. Plaintiff argues that Defendants exceeded the twenty-one-

day response period to respond to her Complaint because she did not receive (1) a response to

her Complaint, (2) Notice to Pro Se Litigants required by Rule 12 of this court's local rules, and

(3) a certificate of service confirming service was made to her physical address. Request at 2-3,

---

[19] The court is also not dismissing Plaintiff's Complaint and requiring her to refile because "[f]orcing plaintiffs with deficient but curable complaints to file new actions, rather than simply amending their initial complaints only serves to undermine the goal of judicial economy." *Unified Data Servs., LLC v. Federal Trade Comm'n*, 39 F.4th 1200, 1213 (9th Cir. 2022) (Smith, J. dissenting in part) (citing *Lopez*, 203 F.3d at 1130).

[20] The court is not obligated to advise a pro se litigant on how to cure the defects in her complaint but does so here out of courtesy to the Plaintiff. *See Pliler v. Ford*, 542 U.S. 225, 232 (2004).

1  ECF No. 29-1.

2       Defendants opposed this Request on December 26, 2023. Opp'n, ECF No. 30. In their

3  Objection, Defendants explained that their Motion to Dismiss was filed on December 11, 2023—

4  nineteen days after Plaintiff's Complaint was served. *See id.* at 1-2. And, when Defendants

5  received notice from the clerk's office of their deficiency for failure to file Notice to Pro Se

6  Litigants and a certificate of service on December 14, 2023, Defendants corrected the deficiency

7  the following day, December 15, 2023. Opp'n at 1-2, ECF No. 30; *see also* ECF Nos. 22, 24.

8       Under Federal Rule of Civil Procedure 55(a), "when a party against whom a judgment for

9  affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

10  affidavit or others, the clerk must enter the party's default." FED. R. CIV. P. 55(a); *see also* CVLR

11  77 (authorizing the clerk of the District Court of Guam to enter order for default in accordance

12  with Federal Rule of Civil Procedure 55).

13       Although Defendants did not file an accompanying Notice to Pro Se Litigants or a

14  certificate of service as required under the local rules on December 11, they did not "fail[] to

15  plead or otherwise defend." FED. R. CIV. P. 55(a); *see, e.g.*, *Duran v. City of Porterville*, 2022

16  WL 2392540, at *1 (E.D. Cal. July 1, 2022); *Morales-Alfonso v. Garcia*, 2017 WL 1650222, at

17  *1-2 (D. Ariz. May 2, 2017). Rather, Defendants timely filed their Motion to Dismiss, and

18  corrected their deficient filing on December 15, 2023. ECF Nos. 22, 24, 30. As such, the clerk of

19  this court correctly did not enter the Defendants' default.

20       Plaintiff's Request for Default is therefore denied.

21  **VII.**   **Conclusion**

22       For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART**

23  **AND DENIED IN PART**. Specifically, the Motion to Dismiss is **GRANTED WITHOUT**

24

1  **LEAVE TO AMEND** with respect to Plaintiff's inclusion of the Individual Defendants in their

2  personal capacities. The Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND** as to

3  Plaintiff's claims for discrimination and retaliation under Title VII, subject to the factual

4  limitations described and to Plaintiff's inclusion of Mr. Camacho in the case. Finally, the Motion

5  to Dismiss is **DENIED** as to Plaintiff's inclusion of the remaining Individual Defendants in their

6  official capacities, except Mr. Camacho as alleged.

7       Additionally, Plaintiff's Motion for Default is **DENIED**.

8       If Plaintiff wishes to file an amended complaint correcting the deficiencies identified

9  above, she must do so within **60 days** of this Decision and Order. Plaintiff may not add new

10 claims or parties without leave of the court or stipulation by the parties pursuant to Federal Rule

11 of Civil Procedure 15. If no such amended complaint is filed by that date, the Complaint will be

12 dismissed with prejudice.

13      **SO ORDERED.**

14

15                                **/s/ Frances M. Tydingco-Gatewood**
                                          **Chief Judge**

16                                **Dated: Sep 30, 2024**

17

18

19

20

21

22

23

24