**THE DISTRICT COURT OF GUAM**

YE-KYOUNG KIM,

Plaintiff,

vs.

UNIVERSITY OF GUAM, et al.,

Defendants.

CIVIL CASE NO. 23-00026

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 55)**

On September 30, 2024, the court granted in part and denied in part Defendants University of Guam, Anita Borja Enriquez, Anthony R. Camacho, Carlos R. Taitano, Sharleen Q. Santos-Bamba, Cathleen Moore-Linn, and Joseph Gumataotao's Motion to Dismiss Plaintiff Ye-Kyoung Kim's Complaint for employment discrimination and retaliation. ECF No. 50; *Kim v. Univ. of Guam*, Civil Case No. 23-00026, 2024 WL 4350188 (D. Guam Sep. 30, 2024). In doing so, the court granted Plaintiff leave to amend. *Id.* On December 2, 2024, Plaintiff timely filed her Amended Complaint. ECF No. 52.

Now before the court is Defendants' Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 55. The court has reviewed the record, the relevant law, and deems this matter suitable for submission without oral argument. For the

reasons stated below, the court hereby **GRANTS** Defendants' Motion to Dismiss.

## I. Procedural History[1]

On November 21, 2023, Plaintiff filed a complaint in this court, alleging that the Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Compl. at 3, ECF No. 1. Following Defendants' first motion to dismiss, the court dismissed Plaintiff's complaint and granted her leave to amend. Decision & Order, ECF No. 50.[2] Plaintiff timely filed her Amended Complaint on December 2, 2024. Am. Compl., ECF No. 52.

On December 16, 2024, Defendants moved to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff insufficiently amended her complaint, omitted necessary factual allegations, and failed to correct certain deficiencies from the original complaint. Mem. at 8, ECF No. 55-1. Specifically, Defendants argue that (1) Plaintiff failed to allege sufficient facts to support her discrimination claims under Title VII and the ADEA, (2) Plaintiff failed to sufficiently allege that she exhausted her administrative remedies, (3) Plaintiff improperly included time-barred claims in her Amended Complaint, and (4) Plaintiff improperly asserted new claims in the Amended Complaint. *Id.* at 5. Plaintiff opposes this motion, arguing that she has sufficiently pleaded her claims. *See* Opp'n, ECF No. 60. In doing so, Plaintiff restates some of the factual allegations contained in the Amended Complaint and supplements those allegations with additional procedural and factual statements not alleged in the Amended Complaint. *Id.* at 15-34.

---

[1] Citations to the record refer to CM/ECF-generated page numbers.

[2] A more fulsome recitation of the procedural posture leading up to the Amended Complaint can be found in this court's prior Decision and Order. *See* ECF No. 50.

## II. Relevant Facts

The court assumes the following allegations are true to resolve the instant Motion to Dismiss. *See, e.g.*, *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, as explained more below, the court refers only to the Amended Complaint because it supersedes the original complaint despite Plaintiff's references thereto. *See* CVLR 15 ("Any party filing an amended pleading may not incorporate any part of a prior pleading by reference, except with leave of Court.").

Plaintiff Ye-Kyoung Kim ("Plaintiff") is an Asian woman of Korean nationality. Am. Compl. at 6, ECF No. 52. In 2021, she was 53 years old. *See id.* at 6, 16. Plaintiff earned a Ph.D. from The Ohio State University and has experience teaching in higher education at the University of Guam, among other institutions. *See id.* at 6; *see also* ECF No. 52-2.

Defendant University of Guam ("University") is a public university in Guam. *See* Am. Compl. at 6, ECF No. 52. Defendants Enriquez, Camacho, Taitano, Santos-Bamba, Moore-Linn, and Gumataotao (collectively, "Individual Defendants") were employed by the university during the events alleged by Plaintiff.[3] *Id.* at 6-7; *see also* ECF No. 52-8.

Plaintiff began working for the University in 2007 as a professor of Teaching English to Speakers of Other Languages and Instructional Technology. Am. Compl. at 9, ECF No. 52. Plaintiff describes her early years at the University as including "discrepancies in pay, exclusion from decision-making processes, and other inequitable practices compared to [her] non-Korean counterparts." *Id.*; *see also* ECF No. 52-3. Plaintiff alleges that those events, taken together,

---

[3] Plaintiff identifies the Individual Defendants' job titles as follows: Ms. Borja, President; Mr. Camacho, General Counsel; Mr. Taitano, Director of Global Learning and Engagement; Ms. Santos-Bamba, Senior VP/Provost; Ms. Moore-Linn, Executive Director Research Corporation; and Mr. Gumataotao, Chief Human Resources Officer. Am. Compl. at 6-7, ECF No. 52; *see also* ECF No. 52-8.

show patterns of discrimination against her that support her current claims. *See generally* Am. Compl., ECF No. 52. For example:

- In 2009, Plaintiff complained to the University and Equal Employment Opportunity Commission ("EEOC") of violations in her reappointment procedures "rooted in discrimination based on race, national origin, and age," which resulted in an EEOC Mediated Settlement Agreement. Am. Compl. at 10, ECF No. 52.

- Between August 2014 and August 2017, Plaintiff alleges that she "faced multiple unsuccessful attempts to secure a full-time position at [the University]." *Id.* In 2017, Plaintiff expressed her interest in the job posting for dean of the University's Student Services Center to Lee Yudin, who chaired the search committee for that position. *Id.* at 11. During that conversation, Plaintiff states that Yudin's "immediate response" was to ask about Plaintiff's visa status. *Id.* When Plaintiff informed him of her marriage to a U.S. citizen, Yudin then told her that she was not qualified, and Plaintiff alleges that this led her to not apply for the position. *Id.*

- On September 15, 2020, Plaintiff alleges that she applied for "Extension Agent III/Assistant Professor of Community, Economic, and Resource Development at the Cooperative Extension & Outreach Service in the College of Natural and Applied Science" at the University. *Id.* at 12. Plaintiff states that although she received an interview, the "selection process deviated from the established 'three years in rank' promotion policy as mandated by the UOG Board of Regents (BOR) Negotiated Agreement." *Id.* Additionally, Plaintiff alleges that her interview started one hour late and included eight members, where only two members were "non-Pacific Islanders with Ph.Ds from the hiring unit." *Id.* at 15. "[D]espite [Plaintiff's] qualifications, the position was awarded to significantly younger (probably under 40 years of age), less qualified internal candidates, Mr. Joseph Tuquero and Dr. Tim C. Dela Cruz, both of Pacific Islander (Chamorro) descent." *Id.* at 13.

- On October 29, 2020, Plaintiff alleges that she raised her concerns about "transparency and accountability in the search process" to Joseph Gumataotao, the Acting Chief Human Resources Officer, and Larry Gamboa, the Acting Director of "EEO/ADA/Title IX Office." *Id.* However, she did not receive a response. *Id.* at 13-14. Then, on October 30, 2020, Plaintiff alleges that Tim C. Dela Cruz was promoted within "CNAS/CE&O, without disclosing his specific role" or providing clear information about his hiring date or terms of employment. *Id.* at 14.

Plaintiff's current claims began in August 2021 when she applied for Associate Director of the University's Global Learning and Engagement Office. Am. Compl. at 16, ECF No. 52. On

October 27, 2021, Plaintiff was selected for an interview and interviewed for the position the following day. *Id.* Plaintiff was not selected for the role around November 1, 2021, and Amanda Blas, a "significantly younger candidate, aged between 30 and 32 years, of a different race (Chamorro) and national origin (American)," was hired despite allegations that she is less qualified than Plaintiff. *Id.* at 16, 18. Plaintiff alleges that the interview was a procedural formality, and that Blas was prematurely selected. *Id.* at 18. In support, Plaintiff points to her history at the University of not being hired for various positions and to select exhibits, including a comparison of qualifications between herself and Blas.[4] *Id.* at 16. Plaintiff also points to flaws in the hiring process, such as Carlos Taitano "self-nominat[ing] and serv[ing] as both a member and the Chair of the search committee," and the search committee "includ[ing] members without doctoral degrees required by university policy for senior administrative roles, such as Mr. Taitano and Ms. Cathleen Moore-Linn." *Id.* at 17-18. Plaintiff concludes that these hiring practices "potentially disadvantaged me, an Asian woman of Korean nationality, 53 years of age in 2021, based on race, national origin, or age, implicating violations of Title VII and the ADEA," and that she faced indirect retaliation following her previous complaints about discriminatory practices. *Id.* at 19.

Regarding the Individual Defendants, Plaintiff alleges the following. Defendant Anita Borja should be held liable for her "participation in the flawed hiring process" and "responsibility for EEO adjudication." *Id.* at 20. Defendant Anthony Camacho should be held liable because he was "misleading, incomplete, or failed to accurately address the issues raised in

---

[4] The court notes, however, that despite Plaintiff stating that she included the job posting for Assistant Direction of Global Learning and Engagement as an exhibit, she did not. *See* Am. Compl. at 16, ECF No. 52. Instead, Plaintiff only attached a comparison of how she views her qualifications for the position compared to Blas along with copies of their curriculum vitaes. *See* ECF No. 52-8.

my EEOC charge, [which] could demonstrate a lack of transparency and procedural fairness," and "his actions in this context might suggest an attempt to obscure or downplay the seriousness of the issues reporting . . . demonstrating a clear causal link between my complaints about discrimination and subsequent adverse actions taken by the university or him."[5] *Id.* at 21. Defendant Anthony Camacho also should be held liable for "[t]he content[s] of the [University's] statement" because it "could be perceived as defensive or retaliatory." *Id.* at 21-22. Defendant Carlos Taitano should be held liable as chair of the search committee for "his role in the procedural flaws and biased handled of the hiring process" and "direct involvement in promoting Ms. Blas." *Id.* at 22. Defendant Cathleen Moore-Linn should be held liable "[a]s a former director and committee member" whose "involvement suggests a continuity of biased practices" and for her "failure to correct or address procedural flaws" and "participation without adequate justification for the bias outcomes." *Id.* at 22-23. Defendant Sharleen Santos-Bamba should be held liable for "[h]er connections within the university and role in the decision-making process," which "could indicate a conflict of interest and bias." *Id.* at 23. Defendant Joseph Gumataotao should be held liable for his "participation in the flawed hiring process," and connection to discriminatory actions as a member of the hiring committee, as well as his "inaction[, which] could be seen as a failure to enforce the university's EEO policies effectively" and "lack of response to the issues." *Id.* at 23-24.

Plaintiff concludes by stating additional claims for breach of contract, violation of fair employment practices, and hostile work environment, which were not alleged in her original

---

[5] The court notes that in support of this statement, Plaintiff cites to a case, "*Pao v. Kleiner Perkins*, 9th Cir. Case No. 11-17675," that appears to not exist. Plaintiff's citation may refer to an unpublished case in the California Court of Appeal, however, it is unclear how Plaintiff seeks to relate this case to her allegations against Defendant Anthony Camacho. *See Pao v. Kleiner Perkins Caufield & Byers LLC*, No. A136090, 2013 WL 3224589 (Cal. Ct. App. June 26, 2013).

complaint. *See id.* at 26-27.

**III. Jurisdiction and Venue**

As explained in the court's Decision and Order dated September 30, 2024, Plaintiff's claims are properly within the court's subject matter jurisdiction and are raised in the proper venue. Decision & Order at 11, ECF No. 50 (citing 28 U.S.C §§ 1331, 1391(b)(1); 29 U.S.C. § 626(c)(1); 42 U.S.C. § 2000e-5(f)(3)).

**IV. Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under Civil Local Rule 15, "[a]ny party filing an amended pleading may not incorporate any part of a prior pleading by reference, except with leave of Court." CVLR 15. While the court's review is limited to the contents of the amended complaint, it may consider certain materials outside the amended complaint, such as its attachments. *See Noise v. Ass'n of Flight Attendants--CWA, AFL-CIO*, 722 F. Supp. 2d 1181, 1191 (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Upon review, the court must accept all factual allegations as true and construe the pleadings in the light most favorable to the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court need not, however, accept legal conclusions "couched as . . . factual allegation[s]" as true. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). To survive a motion to dismiss for failure to state a claim, a plaintiff must assert factual allegations that "suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014) (citation omitted). A claim has a plausible chance of success if it "allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Pro se complaints must be liberally construed "to ensure that pro se litigants do not lose their right to be heard . . . due to ignorance of procedural requirements." *Redd-Oyedele v. Santa Clara Cnty. Off. of Educ.*, No. 5:22-cv-02128-EJD, 2023 WL 2769093, at *2 (N.D. Cal. Mar. 31, 2023) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 969, 699 (9th Cir. 1988)); *see also Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Nonetheless, the court will not "supply essential elements of the claim that were not initially pled." *Redd-Oyedele*, 2023 WL 2769093, at *2 (citing *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1153 (N.D. Cal. 2014); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

## V. Discussion

As an initial matter, the court notes that Plaintiff cites to her original complaint several times throughout the Amended Complaint to supplement her allegations. *E.g.*, Am. Compl. at 8, 10, 13, 16, ECF No. 52. However, the Amended Complaint must stand on its own, and Plaintiff has not sought leave from the court to incorporate her prior allegations by reference. *See* CVLR 15. The court declines to grant Plaintiff leave do so at this stage and, therefore, this Decision and Order does not consider such references.

Defendants' Motion to Dismiss argues that Plaintiff has failed to allege sufficient facts against each of the Individual Defendants, to support her claims under Title VII and the ADEA, and to allege that she exhausted her administrative remedies. Mem. at 8-26, ECF No. 55-1. Defendants also argue that Plaintiff improperly included time-barred and newly pleaded claims in her Amended Complaint. *Id.* at 24-26. Before turning to the sufficiency of Plaintiff's allegations of discrimination and retaliation, the court first addresses Defendants' arguments

regarding Plaintiff's time-barred and newly pleaded claims, the arguments about Plaintiff's failure to allege administrative exhaustion, and those regarding the insufficiency of Plaintiff's allegations against the Individual Defendants.

**A. Newly Pleaded and Time-Barred Claims**

First, the court agrees with Defendants that Plaintiff's newly pleaded claims for breach of contract, violation of fair employment practices, and hostile work environment should be dismissed. *See* Mem. at 24-16, ECF No. 55-1; Am. Compl. at 27, ECF No. 52. Plaintiff has not sought leave from this court or the opposing parties to include such claims. In fact, the court explicitly cautioned Plaintiff against including new claims without stipulation of the opposing parties or leave from the court to do so. *See* Decision & Order at 32, ECF No. 50 (citing FED. R. CIV. P. 15) ("Plaintiff may not add new claims or parties without leave of the court or stipulation of the parties . . . .). Accordingly, Defendants' Motion to Dismiss with respect to these claims is **GRANTED**.

Second, as the court explained in its September 30, 2025 Decision and Order, Plaintiff's allegations predating her application and rejection for Assistant Director of Global Learning and Engagement are time barred for failure to allege administrative exhaustion. *See* Decision & Order at 17-20, ECF No. 50 (noting further that Plaintiff must focus on facts related to her failure to be hired on November 30, 2021, because that is the time frame referenced in her EEOC charge). Even so, the court informed the parties that Plaintiff may include these allegations as "background evidence" in support of her timely claims. *See id.* at 20 n.17 (citing *Lelaind v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1092 n.4 (N.D. Cal. 2008). On this court's review of the Amended Complaint, it appears that these allegations predating 2021 are included to contextualize Plaintiff's claims for discrimination and retaliation arising from her application

and rejection for Assistant Director of Global Learning and Engagement. Therefore, Defendants' Motion to Dismiss is **GRANTED** only insofar as the court does not consider these untimely claims on their own. However, the court continues to consider them as background to Plaintiff's current claims.

**B. Administrative Exhaustion**

The court also agrees with Defendants that Plaintiff has failed to allege administrative exhaustion for her disparate treatment and retaliation claims arising from her failure to be hired for Assistant Director of Global Learning and Engagement. *See* Mem. at 24-27, ECF No. 55-1. As the court explained in the September 30, 2025 Decision and Order, "[s]ubstantial compliance" with administrative exhaustion is required under Title VII. *See Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019) (citing *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001)); *see also* Decision & Order at 21, ECF No. 50.

Here, Plaintiff alleges only that she filled out a pre-charge inquiry form prepared by the EEOC on an unspecified date, that she filed Charge No. 486-2022-00620 with the EEOC on April 28, 2022, and that the EEOC transmitted the University's position statement to her on August 18, 2022. *See* Am. Compl. at 8, ECF No. 52; *see also* ECF Nos. 52-7 at 6-9; ECF No. 52-9 at 3-10. Although it is clear that Plaintiff filed a charge with the EEOC within the applicable 180-day window, Plaintiff did not allege any facts regarding the outcome of her EEOC charge, whether the EEOC issued a right to sue letter, or any other facts pertinent to whether she has administratively exhausted these claims or substantially complied with the subsequent administrative requirements before bringing them in this court. *See* Williams, 2019 WL 6311381, at *6; *Sommatino*, 255 F.3d at 708. In fact, the bulk of Plaintiff's attachments and allegations relate to communications she had with the University and the EEOC about her prior

applications—i.e., her time-barred claims. *E.g.*, ECF Nos. 52-3, 52-4, 52-5, 52-6 at 5-10, 52-7 at 10-11, 14-19, 52-9 at 1-2, 11. Because Plaintiff has not adequately alleged administrative exhaustion, Defendant's Motion to Dismiss on this ground is **GRANTED**.

**C. Claims Against the Individual Defendants**

Regarding Defendants' arguments about whether Plaintiff has sufficiently alleged claims against the Individual Defendants, the court agrees. *See* Mem. at 8-24, ECF No. 55-1. As explained in the court's prior Decision and Order, civil liability under Title VII and the ADEA is limited to the employer. Decision & Order at 17, ECF No. 50 (citing *Bounchanh v. Wa State Health Care Auth.*, No. 3:19-cv-05171-RBL, 2019 WL 6052405, at *4 (W.D. Wash. Nov. 15, 2019); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993)). Here, Plaintiff properly amended her complaint to specify that she is suing the Individual Defendants in their official capacities. *E.g.*, Am. Compl. at 6, ECF No. 52. However, Plaintiff has not sufficiently alleged facts to assert claims for disparate treatment and retaliation under Title VII and the ADEA against Defendant Camacho.

Plaintiff's allegations that Defendant Camacho participated in the alleged disparate treatment and retaliation are limited to Defendant Camacho's filing of the University's response to EEOC Charge No. 486-2022-00620 on August 18, 2022. *See id.* at 21-22; ECF No. 52-9 at 3-10. Plaintiff concludes that the response was "misleading, incomplete, or failed to accurately address the issues raised," but does not explain how the response was misleading, incomplete, or inaccurate such that it amounted to an adverse employment action under Title VII or the ADEA or was based on her protected characteristics. Am. Compl. at 21, ECF No. 52. Plaintiff also does not explain how Defendant Camacho participated or otherwise had a role in the alleged disparate treatment or retaliation that arose from her failure to be hired for Assistant Director of Global

Learning and Engagement. *See* Am. Compl. at 21-22, ECF No. 52. As pleaded, Plaintiff's allegations against Defendant Camacho only speculate about how his actions as the University's general counsel perpetuated the discriminatory system that she alleges. Therefore, Defendants' Motion to Dismiss on this ground is **GRANTED** and the claims against Defendant Camacho are **DISMISSED**.

The court addresses the sufficiency of Plaintiff's allegations against the remaining Individual Defendants (Anita Borja Enriquez, Carlos R. Taitano, Sharleen Q. Santos-Bamba, Cathleen Moore-Linn, and Joseph Gumataotao) together with the sufficiency of Plaintiff's disparate treatment and retaliation claims more broadly below.

**D. Discrimination Claims**

In the court's prior Decision and Order, it explained that any amendment to Plaintiff's complaint would be limited to her allegations of disparate treatment on the basis of race, national origin, and age and retaliation under Title VII and the ADEA relating to her application and rejection for Assistant Director of Global Learning and Engagement. Decision & Order at 22, 29-30, ECF No. 50. The court also limited Plaintiff's claims against the Individual Defendants, such that they may only be sued in their official capacities. *Id.* The court further delineated the necessary elements of the claims for which Plaintiff was required to allege sufficient facts in support. *Id.* at 22-30. These standards are simplified and rearticulated herein to address the instant Motion to Dismiss.

**1. Title VII Disparate Treatment Claim**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may demonstrate discrimination

under a theory of disparate treatment, which occurs when an employer "has treated a particular person less favorable than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (cleaned up). A plaintiff may show a motive to discriminate through direct or circumstantial evidence. *E.g.*, *Kamara v. Adams & Assocs., Inc.*, No. 2:16-cv-02300-TLN-KJN, 2017 WL 4340255, at *2 (E.D. Cal. Sept. 29, 2017); *see also Bayless v. Bd. of Trs. of Clark Cnty. Sch. Dist.*, No. 2:22-cv-00335-JAD-NJK, 2022 WL 5206659, at *3 (D. Nev. Oct. 4, 2022).

Generally, a claim for disparate treatment requires a plaintiff to allege that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances indicate discriminatory intent. *See Sheets v. City of Winslow*, 859 F. App'x 161, 162 (9th Cir. 2021) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)). Failure to hire is a common manifestation of disparate treatment. *Brooks-Joseph*, 697 F. Supp. 3d at 1097 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). For failure-to-hire claims, a plaintiff must show the following to plausibly allege a claim for disparate treatment under Title VII: (a) she belongs to a protected class; (b) she was qualified for the position; (c) she was rejected despite her qualifications; and (d) the position remained open. *McDonnell Douglas*, 411 U.S. at 802.

The Amended Complaint alleges that Plaintiff is a member of a protected class as an Asian woman of Korean nationality and that she was not hired for the role of Assistant Director of Global Learning and Engagement around November 1, 2021. *See* Am. Compl. at 6, 16, ECF No. 52. Although Plaintiff alleges that she was qualified for the position, she has failed to provide sufficient facts to support this conclusion. For example, although Plaintiff attaches her and Amanda Blas's curriculum vitaes to the Amended Complaint and compares their

qualifications under a select number of criteria, Plaintiff does not actually allege how she was qualified for the role of Assistant Director of Global Learning and Engagement in the first place. *See* ECF Nos. 52-2, 52-6 at 11-13, 52-7 at 1-5, 52-8 at 7-10. Instead, Plaintiff states why she believes she was more qualified than the other candidates, specifically Amanda Blas, and how the candidates are of a different race and national origin. *E.g.*, ECF No. 52-8 at 7-10. Plaintiff also alleges that she was treated less favorably than other candidates because of her race and national origin, but she does not allege facts sufficient to support this conclusion beyond prior instances of not being hired for other positions at the University. *See* Am. Compl. at 9-15, ECF No. 52. Instead, Plaintiff relies principally on the short timeframe with which she was interviewed, her ultimate failure to be hired, how she received a lower interview score than three of the five candidates despite her "superior qualifications."[6] *See id.* at 16-17; ECF Nos. 52-6, 52-9. Although Plaintiff alleges that she was treated unfairly, the only clearly stated facts regarding the actual application, interview, and selection processes for Assistant Director of Global Learning and Engagement are contained in the University's response to her EEOC charge, which do not support her allegations. *See* ECF No. 52-9. Plaintiff further devotes a large portion of her Amended Complaint to describing prior issues with her employment and comments made by others at the University, such as her negotiated settlement agreement and Lee Yudin's comments about her visa status. *See* Am. Compl. at 9-15, ECF No. 52. Despite this, Plaintiff's current claims do not sufficiently allege how she was treated less fairly in the hiring process for Assistant Director of Global Learning and Engagement because of her race or national origin, or how the other candidates were treated more favorably. Plaintiff also does not sufficiently allege

---

[6] As noted in the University's response to EEOC Charge No. 486-2022-00620, the fifth candidate did not show up for the interview. ECF No. 52-9 at 6.

how each of the Individual Defendants participated in the alleged discrimination beyond their leadership roles or participation in the hiring committee. *See id.* at 20-24; ECF No. 52-8 at 1-6.

Even when the court assumes the facts of the Amended Complaint are true and construes these facts in the light most favorable to Plaintiff, the court finds that Amended Complaint fails to sufficiently allege facts to support Plaintiff's claim for disparate treatment under Title VII. Accordingly, Defendants' Motion to Dismiss is **GRANTED** on this ground.

**2. ADEA Disparate Treatment Claim**

It is unlawful under the ADEA for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). As under Title VII, a plaintiff may assert a violation of the ADEA under a theory of disparate treatment. *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990). Unlike Title VII, however, the ADEA requires that age discrimination claims allege that age was the "but-for" cause of the employer's adverse decision. *See Barnes v. Saul*, 840 F. App'x 943, 945 n.1 (9th Cir. 2020) (citing *Babb v. Wilkie*, 589 U.S. 399, 402 (2020)); *see also* Bayless, 2022 WL 5206659, at *3; *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 606 (1993) ("[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."). Failure-to-hire claims under the ADEA require a plaintiff to allege that she was: (1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the position was given to a substantially younger person. *See Barker*, 2023 WL 6933357, at *3 (citing *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012)) (failure to promote).

As with Plaintiff's Title VII disparate treatment claim, Plaintiff sufficiently alleges her membership in the protected class (being 53 years of age in 2021) and that she was not hired for the position of Assistant Director of Global Learning and Engagement. Am. Compl. at 6, 16, ECF No. 52. Plaintiff also alleges that the position was given to Amanda Blas, a candidate under 40 years of age. *Id.* at 16. However, Plaintiff's allegations regarding whether she was qualified for the position remain insufficient and conclusory. *See id.* at 16-26. As explained above, Plaintiff attached her and Ms. Blas's curriculum vitaes to the Amended Complaint along with a comparison of their experiences in the context of a select number of categories. *See* ECF Nos. 52-2, 52-6 at 11-13, 52-7 at 1-5, 52-8 at 7-10. Plaintiff does not, however, provide the actual job posting for Assistant Director of Global Learning and Engagement, nor does she explain why she is qualified for the role. Instead, Plaintiff makes conclusory allegations that she is more qualified than Ms. Blas. *See* Am. Compl. at 16, ECF No. 52; ECF No. 52-8 at 7-10. Moreover, Plaintiff does not sufficiently allege how age played a role in her failure to be hired beyond stating that Ms. Blas was under 40 years old and, therefore, age must have been a factor. *See* Am. Compl. at 16, ECF No. 52. Furthermore, unlike Plaintiff's Title VII disparate treatment claim, she does not allege facts from her prior experiences with the University to plausibly suggest ongoing age discrimination that manifested in her failure to be hired for Assistant Director of Global Learning and Engagement.

Assuming Plaintiff's allegations are true and construing them in the light most favorable to her, the court nonetheless finds that the Amended Complaint fails to sufficiently allege facts to support Plaintiff's claim for disparate treatment under the ADEA. Accordingly, Defendants' Motion to Dismiss is **GRANTED** on this ground.

**3. Retaliation Claim**

Finally, both Title VII and the ADEA prohibit retaliation against an employee because the employee "opposed any practice made an unlawful employment practice . . . , or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also* 29 U.S.C. § 623(d); *Poland v. Chertoff*, 494 F.3d 1174, 1180 n.1 (9th Cir. 2007) (explaining how Title VII and ADEA anti-retaliation provisions are parallel statutes). Retaliation claims under both Title VII and the ADEA require a plaintiff to allege that "(1) [she] engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *see also Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997) (explaining that cases interpreting Title VII are "frequently relied upon in interpreting" the ADEA)). A plaintiff need not make a prima facie case for retaliation. Rather, only a short and plain statement of the claim showing that they are entitled to relief is necessary. *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 808 (9th Cir. 1998).

Here, Plaintiff has not sufficiently pleaded a claim for retaliation under Title VII or the ADEA. Plaintiff's allegations of retaliation appear to rely exclusively on her history of not being hired for positions "for which she was eminently qualified" and her prior EEOC charge and settlement agreement. *See* Am. Compl. at 9-15, 26, ECF No. 52. However, beyond conclusory statements about the reasons for her failure to be hired for past positions and how the University and its employees look unfavorably on her prior conduct, Plaintiff does not allege facts that plausibly support a causal link between her prior protected activities and her failure to be hired for Assistant Director of Global Learning and Engagement. *See Ray*, 217 F.3d at 1240; *see also*

*Barker*, 2023 WL 9633357, at *7. Plaintiff alleges only that she faced "indirect retaliation" following her prior complaints and that this influenced her failure to be hired. Am. Compl. at 19, ECF No. 52. Plaintiff points to communications indicating "reluctance or negative bias towards [her] from members of the hiring committee," but no such emails are attached. *See id.* Even when the court construes the Amended Complaint and its attachment in the light most favorable to Plaintiff, the court finds no such communications were made or that Plaintiff's prior acts influenced the hiring committee's decision here. Accordingly, the court finds that Plaintiff has filed to state a claim for retaliation based on the facts before the court. Therefore, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's retaliation claims under Title VII and the ADEA.

**VI. Leave to Amend**

"Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). The court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Dismissal without leave to amend is generally improper unless the complaint clearly "could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

As explained above, Plaintiff's Amended Complaint is factually insufficient to survive dismissal under Rule 12(b)(6). The court provided Plaintiff with an opportunity to amend her original complaint to address these deficiencies, including directions to allege facts in support of her claims under Title VII and the ADEA with greater specificity and to plead the necessary

elements under the applicable law. *See* Decision & Order at 30, ECF No. 50. Upon repleading, Plaintiff did not heed the court's instructions and, instead, replaced many of her prior factual allegations with conclusory statements or omitted necessary facts altogether. Furthermore, in both the original complaint and the Amended Complaint, Plaintiff references exhibits, such as correspondences and job postings, that she did not actually attach or plead. *E.g.*, Am. Compl. at 16, 19, ECF No. 52. Against this backdrop and considering that this is now Defendants' second motion to dismiss on similar grounds, the court does not find that an additional opportunity to amend would save Plaintiff's claims. Therefore, the court **GRANTS** Defendants' Motion to Dismiss and **DENIES** Plaintiff leave to file a second amended complaint.

**VII. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and the Amended Complaint is **DISMISSED with prejudice**. The Clerk of Court is directed to close this case.

**SO ORDERED.**




Frances M. Tydingco-Gatewood
**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Sep 05, 2025**